W. A. v. Hendrick Hudson Central School District. If it please the Court, Daniel Pettigrew, Counsel for the Appellant Across Appellee, Hendrick Hudson Central School District. The issue before you, Your Honors, is that whether or not the District Court erred in awarding tuition reimbursement to the parents for a private school that did not provide a specially designed instruction in a case where we would submit to you that there was no qualitative difference between the SRO decisions in case number one and case number two. You should know that the SRO was the same SRO. The decisions were issued within six weeks or roughly less than two months of each other. And in both cases, we would argue that the decision of the SRO was well-reasoned. It had a carefully and thorough discussion of the evidence, and this Court and the District Court, we argue, should have been bound to support the decision of the State Review Officer. While there may have been some differences in the administrative records that were before the SRO, there were a couple of additional witnesses in case number two. There may have been... There was an affidavit that the District Court exercised discretion to receive. Yes, and that brings up an interesting point, Your Honor. We would submit that, really, he issued that decision accepting the affidavit in a footnote, not a decision. There was a motion to admit the evidence, and what we would submit is that the additional evidence was a rehash and an embellishment by a witness who had already testified in case number two. It's true that he did not testify in case number one, but the Court, I believe, in its opinion in case regarding the SRO's decision in case two, specifically said that the witness stated that he had access to the iPads and he was the only student in the school. It might be more useful, instead of case number one and number two, when we have three years, to just talk about as 2010, 2011. Sure, sure. Sure, Your Honor. What we would submit is in the additional evidence that, with regard to the sophomore year, that the Court should follow the First Circuit standard in the Burlington case, in which there really was a rebuttable presumption, the Court found there, the evidence should have been, why the evidence wasn't submitted to the Court, why the witness didn't testify in the underlying hearing, an explanation as to why. I think that the district court here just simply looked at the issue of, well, there was no bad faith, so we should accept it. And I think part of the problem is, and that this circuit has held, that there should be particular deference to SRO decisions when there is no distinction between the records that were being reviewed. In 2012, the Court found that there were additional measures that were taken at the Northwood School. We would argue they were. And there were additional measures taken at the Northwood School. There were additional accommodations. We agree that there were additional accommodations. The use of an iPad, a supervised study hall, and access to nursing services. But in reality, those accommodations are no substitute for specially designed instruction. And that, in fact, is what this Court has held on a number of occasions, that an accommodation plan is not a substitute for an IEP. I think the Board's problem is that, for some reason and in some way, this student went from having over 100 days off of school, which amounts to no education, to having nine, nine or ten. Something happened. And why can't it be assumed that the conditions change such that the student could learn and attend class? If you can't attend class, you're not going to learn. I agree, Your Honor. But that's not the standard that this Court has set. The standard for determining whether a private school is appropriate is whether a student . . . It's the same considerations and criteria that they review when you're looking at whether the public school program is appropriate. Did the student receive specially designed instruction? We can see that he received accommodations, but . . . When you say the school didn't provide anything that would improve on what the school provided, and the school conceded it was not providing an appropriate education, and yet, and yet, and yet, the problem vanished. Well, we would argue it didn't vanish entirely. Yes, he was going to school, but he was . . . based on the findings, unable to attend school, to attending school. True, Your Honor. But, he was not receiving any specially designed instruction for his organizational deficits and even the counseling. And just want to point out to the Court, the parents enrolled this child originally in the private school because of the persistent vulnerabilities in his social-emotional issues. I mean, that's what his psychiatrist said. That's what the psychologist said. And . . . Counsel, what's an example of what should be in the record from your perspective in order to . . . for us to uphold the decision? So, what should be in the record are, for example, specific instances where the teachers were breaking down the tasks. This student showed a disengagement in certain subjects, certain topics. He was frequently late in submitting assignments, completing classwork. The parents themselves even suggested goals in that area to be worked on. And, there should have been evidence in the record of what the teachers did in the class. In fact, the teachers have said . . . . . . tools that essentially accomplished the same thing following along Judge Jacobs. Yes, we would agree with that, Your Honor. And, specifically . . . Another question. Sorry about . . . Right, no. In the counseling in particular, yes, the school counselor provided what he referred to as purposeful, attentive conversations. Whether they occurred in the dorm room, at an assembly, or while climbing rocks. But, that didn't get into the underlying . . . the need for this student, which everyone agrees he needed . . . insight into an understanding as to what causes anxiety and stress. And, coping skills had to deal with that. That's why the psychiatrist recommended a systematic psychotherapy program be added prior to the 12-13 school year. That did not occur. That occurred, not until March of 2013, six months into the school year . . . when the parents informed the teacher, the counselor, as well as the Director of Guidance . . . that the student was less enthusiastic, was more withdrawn. And, then arranged to set up through a private psychologist. Or, a social worker, not connected with the school to have these therapy sessions. It wasn't part of the private school's program, to offer this. So, that's the kind of examples of specially designed instruction. Even the District Court agreed that from the counseling standpoint, that that was a critical part. That that was not specially designed. That that weighed, in fact, in favor of the SRO's decision. Did he make the point that he was not getting assistance that's different from what the other students in the private school were getting? Yes. Yes, Your Honor. He was getting assistance that was different from what he was offered in the public school. Well, he was . . . we can see that the public school program, and that's not an issue before your court. But, while he was at the private school, he had to get something specific, specifically targeting his needs. From the other children in that school. That's the right comparator? Yes. And, he was getting the same kind of accommodations that were available to all the students in the school. Whether it dealt with supervised study hall, whether it dealt with his extended time, preferential seating, even use of the iPad. That was all accommodations that were available to other students. In that school? In that school. Clearly, the law isn't that you have to essentially be a class of one and have your own special accommodations in order to merit some reimbursement. No. We're not suggesting that at all. Why are we using as comparators what's provided to other students? Well, it has to be . . . it really has to be specially designed to meet the unique needs of this student. That's the only issue. This is not a private school . . . What if all the other students had the same unique needs so that you could provide that specially designed program for five students or ten students all at the same time? They lose because they're all alike and all have the same sorts of needs? No, not necessarily. I mean, you have to take each of these students on an individual basis. I mean, we're just focusing on this student . . . Clearly. And clearly this . . . You're saying because the other students get the same sort of thing as he does, if you put the shoe on the other foot, then he's not special and he's not getting special attention. We would argue that it's clearly not a special education school. We don't know what types of services the other students were getting. What we do know is what this particular student's needs were, organizationally, motivationally, and from a social and emotional standpoint. And the SRO, I think, concluded correctly in both cases, in a very thorough discussion of the types of services. There was really nothing in the record to show that there was any specially designed instruction. Thank you. Okay. May it please the Court. Good morning, Your Honors. My name is William Walsh. I represent the parents, WA and MS, as well as the student, WE, in this matter. The district's fundamental position is that Northwood offered no educational benefits to WE. For the district, the school offered no specialized instruction. For the district, Northwood offered nothing to deal with his health and migraine issues. For the district, Northwood offered nothing to address his social isolation. And this position for the district is not surprising. It's consistent as the district have fundamentally ignored WE throughout his middle school years and failed to provide or offer any support for him during his eighth grade year. The district does not come in here today and challenge the determination that it denied FAPE for the 2012-2013 school year, does not challenge or deny that it denied FAPE for the 2011-2012 school year. Equally, the district throughout, though its psychologist found in his seventh grade year that the student required monitoring for his eighth grade year, the district did not install monitoring. Although testing revealed that WE in his seventh grade year had a somatization disorder for which there was a clinically significant score, which in the school psychologist's own language demonstrated a maladjustment that required immediate attention, the school district, again, did nothing. What if the decisive feature of the education at Northwood is smaller classes, closer teacher attention, and things that any parent would want for their kid in a public setting as well? Our precedents seem to say that that's not enough. It might work. In other words, for a lot of students, it might really work to have smaller classes and be in a smaller school and have less social pressures. But it looks like what you're pressing, as the advantages of Northwood, really just amount to the very desirable, very effective benefits that any parent would want for any child. Your Honor, specific to WE, Dr. Williams, who was his personal psychiatrist, who was acknowledged as an expert when he testified before the IHOs in ninth and tenth grade years, detailed the specific needs that WE needed in his educational environment. Now, you're right. A small class may be something and may well be something that would benefit most students. But specific to WE, Dr. Williams said a small class in the small class environment, due to the stress and the consequences of his stress, the migraines, the somatization disorder that he experienced, he needed those classes. That was the specific special service that WE required. Our precedents say that it's not enough for the private school to provide stuff that any parent would want for any kid. It may be that a particular child has particular need for those things. But under our precedents, you don't get them if they are the things that any parent would want for any child. I would, while I recognize your point, Your Honor- That's a question, it's not a point. No, I- I don't know, I'm just- Okay, fair enough. I would disagree with the assessment, because going to what Mr. Pettigrew is discussing with regard to specialized, specially designed instruction, both under the federal and New York regulations, looking here at 8 NYC RR section 801 VV. Specially designed instruction means adapting an appropriate, as appropriate to the needs of the eligible student under this part, the content methodology or delivery of instruction to address the unique needs of that student. Now, in this case, the unique needs of the student were what was delivered at Northwood. If you look at, first, whether the content needed to be adjusted, whether there was a need for WE to adjust how he was learning geometry or how world history was taught, there is not. He could access the content as well as any other student. Equally, there is nothing with regard to methodology that was relevant here. Rather, the sole issue here is, and what needed to be adjusted, was the delivery of the instruction. And the district itself, for the IEP that it finally developed for his sophomore year, recognized that WE would benefit from a smaller class. They moved from the 24 or 25 students in a high school regular public school class to an 8 to 1 recommendation. So for WE, the specialized instruction that he needed was that small classroom. Further, Dr. Williams provided information to the district identifying the other needs. He wrote that what WE needed was, quote, small supportive classes, 24-hour nursing services with two nurses, a structured study hall, medication management, therapeutic recreational services, flexible individualized counseling services, flexibility with assignments, an accommodation plan, an academic advisor to be carefully monitored by staff. Northwood provided each and every one of these elements. Yes, most students would benefit from having preferential seating where you are in a class of eight individuals, you're sitting next to your teacher. But here, that was a specific need that WE required, and it is a specific need that Northwood addressed by giving him the preferential treatment where the teachers were able to passively observe what he was doing in class. Mr. Pettigrew identified some of the things that this court should look to. Mr. Corbell, who was WE's history teacher from 9th and 10th grade, provided that express testimony. He talked about looking at WE. He described the iPad as a godsend to WE for his ability to organize his work. While Mr. Pettigrew is making representations, his representations are inaccurate also with regard to the iPad. With regard to Northwood, why, yes, there were students who were also using it. Indeed, WE's use arose from the chemistry class. WE was the only student of the 170 within the school system that was required to have the iPad. Equally, for the counseling that was provided, he was one of a small handful, six or seven students within the school who was receiving counseling. Yes, counseling was available to all, but he was one of the few that it was required to. He was the only one for whom specially guided notes were provided to by each of his teachers that he received. Dr. Risenberg, who conducted a full neuropsych evaluation of WE, noted his inability for having short-term memory, and therefore his inability to both take notes and focus on instruction during class. Therefore, the guided notes that the school provided as part of the accommodation plan to WE were specially tailored to his specific needs. In this instance, as with each of the elements of the accommodation plan, what WE received from Northwood was specific to the needs that Dr. Williams identified. With regard to the district court's underlying determination, Judge Karras provided a careful and thorough examination of the record. He provided a detailed examination with regard to the elements going to each of the issues at hand. In reading his decision, you'll see that he is giving a weighing of the information, a weighing of the evidence towards a preponderance of it, specific with his appropriate review of the SRO's determination. But the district court made . . . Judge Karras made a different determination with respect to the tenth grade year, right? Yes, he did, Your Honor. Tease that out for me, at least, please. What's the factor in there that . . . There are several factors, Your Honor, and Judge Karras looked at them. I think the one that he provided the greatest emphasis with in tenth grade was the iPad. Again, Mr. Korbel provided extensive testimony with regard to the benefit that that iPad had. He talked about observing William, utilizing that iPad, organizing his work, and providing information, utilizing it, actually, to provide information to the class. While the SRO overlooked that issue, the district court emphasized it. Equally, the district court emphasized the advantages of having nurses available. Now, here, I think, actually, Judge . . . They weren't available in the previous years, which did have approval, or that just wasn't a factor that was brought up with respect to that? Oddly, Your Honor, I think that's one of the aspects of error underlying his determination for freshman year, because Judge Karras did not mention nursing during the freshman year, but he uses it as a benefit adhering to the student for the sophomore year. For his freshman year, actually, the availability of nursing became a greater benefit because, as noted, Dr. Williams recommended it. W.E. arrived at Northwood. There were two nurses at the school. One became his academic advisor for his freshman year. The second was, in essence, his hall individual. The nurse had her apartment at the end of that hall. Therefore, he had availability and access to the nurses. Twenty-four hours, the nurses were readily available to him. So that's where he was looking at the nurses, and I think it would be a further advantage for a freshman year. Now, Your Honor, you asked earlier why this court cannot assume that there was an advantage in W.E. going from missing 108 days to missing 9 days and 10 days, and why you can't assume that there was an advantage that Northwood provided. Judge Karras, in his decision, expressly addressed this. He said it belies common sense to suggest that W.E.'s improvements to this regard was not attributable to the specific improvements in his educational environment. Where I believe that Judge Karras erred with regard to the freshman year, while he did find tuition reimbursement in the sophomore year, is he failed to consider the academic advantages. You have a student who went from not only missing 108 days to missing 9, but you have a student who went from receiving no academic credit, who was forced to drop his enriched English class, who was doing no homework, who was not turning in assignments, who was not reading the books in class, was not attending, and was basically, due to migraines, unable to attend school. And he went from that to the following year, fully integrated in the school, a leader in his classroom, turning in his homework. Yes, occasionally it was late, but it wasn't frequent. It was, on a number of occasions, late. He went from having no academic credit to maintaining a B average, with the exception of Spanish, where he received a C. But there's a significant value in, yes, getting the student back into the classroom, having him learning again and being able to progress, rather than not reading . . . the record denotes all the books that he was reading during his freshman and then on into his sophomore year. Again, as Judge Karras recognized, it belies common sense to find . . . not to find that Northwood provided not only benefits at an attendance level, but also at an instructional level, that benefited W.E. substantially. Equally, if you don't mind, there's a brief issue on Child Find, if the Court wishes to hear that. That's with respect to the first year. It's with regard, actually, to his eighth grade year, before he left the district, Your Honor. It's the first year at issue. First year at issue, fair enough. Child Find requires a determination that the student was one who would be identified as with special . . . requiring special education services. And the look is that whether the district was negligent in failing to identify and refer the student on, in essence, to a CSE. Why wouldn't they assume that a child who was missing a lot of school because of stomach migraines had a physical problem? And if he wasn't there, there wasn't very much they were going to be able to do for him. Your Honor, because under the definition for other health impairment, which is a classification for special education, an individual's impairment for health . . . weakened, disabled, unable to access and process allows him to special educational services. Yes, they were aware that he was missing classes. Yes, they were aware that he was receiving debilitating . . . he was suffering from debilitating migraines. That should have flagged for them. Particularly after the school psychologist, the prior year, had identified him as requiring monitoring and requiring immediate intervention. That should have flagged for them when, as the prior year, he had missed 30 days through the whole year. By December, when he had 30 days . . . But in the year you're talking about, he had above average grades. No . . . Which began to go south in December, which is three months into the term. Your Honor, he had above average grades for the first quarter, which ended earlier. It ended in November. By December, he had dropped Enriched English. By December, he was well on his way to receiving incompletes in January, for all of his major subjects. Those incompletes were changed to medical incompletes, subsequently on the report card. Those were classes at the end of the year, for which he would receive no credit. The medical incompletes just explain why the IHO, in her determination, found that a child find . . . that the district failed to live up to and meet its child find obligations. Because by December, when this student had missed 30 days, even though district policy stated that a student is subject to not progressing after 20 days, they should have stepped in. They had an affirmative obligation under which to step in. Here, the district, even though they knew the prior May, that they should be monitoring the student, failed to do so. Thank you. You're welcome, Your Honor. Yes, Your Honor. Picking up on the child find issues, I think the precedent in this circuit is pretty clear that you're required to find . . . It's not just any student who is having a struggle needs to be evaluated. There must be a suspicion that special education is required. And, I think the record is replete that the student's grades continue to be strong through at least December. In fact, when the parents had asked for a 504 meeting, the district went and asked for information from the teachers . . . as to what they felt and all felt that he was, you know, a solid student. In fact, the parent withdrew her request for the . . . The student, he just wasn't there. Well, Your Honor, as late as March, when the parents in the record . . . when the parents submitted their teacher recommendations to the Northwood School . . . two teachers of the student in eighth grade found that, you know, his understanding of concepts was high. He was able to attend to tasks. And, even one of them said, you know, look, even if . . . when he's not physically present . . . when he comes back, he quickly gets right back on track. That doesn't sound to me as some . . . as would be enough sufficient information for a school district . . . to suspect at that point that a child requires special education services. Well, the evaluations that the district had at the time, indicated that he was a solid above . . . average to above average, academically and cognitively. With regard to, I think, Judge Schwall's question about why Judge Karras found a difference in year . . . in the student's sophomore year, as opposed to the freshman year. I think the difference really boils down to the fact that there was a . . . a disagreement between the IHO and the SRO. Whereas, there was no disagreement in the first year. And, if you really look at the evidence in the record that the SRO considered, there was no instruction. Yes, he got access to the iPad, but there was no instruction on how he was using it. There was no instruction in the supervised study hall, on how he was approaching and attacking his abilities to manage tasks. And, as far as the individualized nursing services that I guess the IHO . . . that Judge Karras referenced in the IHO's decision. Sure, if you look at the logs of the nursing, when the student had an onset of migraines . . . the recommendation was to eat and drink and have fluids and get some rest. No different than any other student would get if they had migraines. And, in fact, there is a reference at one point that if the migraines were . . . a student was being absent from school, he would . . . I just want to end by saying, in this case, I think what Judge Karras did was . . . because there was this disagreement between the IHO and the SRO . . . it allowed him to carefully go through the record and identify evidence that he felt that the SRO specifically didn't focus on. And, that I believe disregarded the duty of the court that in areas of educational progress . . . and appropriateness of a program, you need to defer to the experts. In this case, the state administrative officers. And, it's not even enough to reach the right conclusion. But, part of that expertise is deciding what evidence is necessary to show to be supported. And, I think . . . How does that square with deference that would almost always be owed to the finder of fact? The independent hearing officer. Yes. Well, I think in this case, if you look at the IHO's decision, it's sparse and superficial. You know, the SRO carefully went through all of the individual accommodations on the . . . Went through the counseling services. Went through all of that evidence and felt that it did not show specially designed instruction. Was the state review officer the same person in the freshman and the sophomore years? Yes, Your Honor. Thank you. Thank you both. We'll reserve decision. Thank you, Your Honors.